**THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| **TRISTIN SCHIMANSKI, on behalf of herself, individually, and on behalf of all others similarly situated,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | **Case No. 1:24-cv-10991** |
| **v.** | ) ) | **Hon. Jeremy C. Daniel** |
| **PEAK HOME HEALTH CARE, LLC d/b/a PURPOSECARE OF ILLINOIS – JOLIET,** | ) ) ) | |
| **Defendant.** | ) ) ) | |

**JOINT MOTION FOR PRELIMINARY APPROVAL OF
CLASS AND COLLECTIVE ACTION SETTLEMENT**

**ATTORNEYS FOR PLAINTIFFS:**

James B. Zouras
Ryan F. Stephan
Teresa M. Becvar
Gillian C. Kimmons
STEPHAN ZOURAS, LLC
222 W. Adams Street, Suire 2020
Chicago, Illinois 60606
(312) 233-1550
jzouras@stephanzouras.com
rstephan@stephanzouras.com
tbecvar@stephanzouras.com
gkimmons@stephanzouras.com

**ATTORNEYS FOR DEFENDANT:**

Joseph K. Mulherin
Mark A. Nelson
MCDERMOTT WILL & EMERY LLP
444 W. Lake Street
Chicago, Illinois 60606
(312) 372-2000
jmulherin@mwe.com
mnelson@mwe.com

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................................1

I.      FACTUAL AND PROCEDURAL BACKGROUND.........................................................2

        A.      Procedural History ................................................................................................2

        B.      Discovery Completed............................................................................................3

        C.      Settlement Negotiations ........................................................................................3

II.     SUMMARY OF THE SETTLEMENT TERMS................................................................4

        A.      The Settlement Amount ........................................................................................4

        B.      Payments to Class Members .................................................................................5

        C.      Release ..................................................................................................................5

        D.      Allocation Formula ...............................................................................................5

        E.      Service Payment to Named Plaintiff.....................................................................6

        F.      Attorneys' Fees and Litigation Costs....................................................................6

        G.      Settlement Administrator ......................................................................................7

III.    CLASS ACTION SETTLEMENT PROCEDURE .............................................................7

IV.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE .................8

        A.      The Court Should Provisionally Certify the Settlement Class Under
                Rule 23 and the FLSA.........................................................................................10

        B.      The Settlement Is Fair, Reasonable, and Adequate ............................................18

                1.      The Class Is Adequately Represented by the Class Representative
                        and Class Counsel (First Factor)............................................................18

                2.      The Settlement Was Negotiated Fairly (Second Factor). ........................19

                3.      The Settlement Amount Adequately Provides Relief

DM_US 214224612-1.111317.0149

    to the Class (Third Factor). .......................................................................20

   4.  Class Members Were Treated Equitably Relative to
    Each Other (Fourth Factor)........................................................................25

V.  THE SETTLEMENT NOTICE PLAN AND AWARD DISTRIBUTION PROCESS
  ARE APPROPRIATE..........................................................................................................26

VI.  PRELIMINARY APPROVAL OF CLASS COUNSEL'S REASONABLE
  FEES AND COSTS IS APPROPRIATE.........................................................................27

CONCLUSION......................................................................................................................................29

DM_US 214224612-1.111317.0149

## **TABLE OF AUTHORITIES**

### **Cases**

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
    No. 07 Civ. 2898, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012)................................................. 9

*Amchem Prods., Inc.* v. *Windsor*,
    521 U.S. 591 (1997)........................................................................................................ passim

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee*,
    616 F.2d 305 (7th Cir. 1980) .......................................................................................... passim

*Barragan v. Evanger's Dog & Cat Food Co.*,
    259 F.R.D. 330 (N.D. Ill. 2009)............................................................................................ 11

*Boeing Co. v. VanGemert*,
    444 U.S. 472 (1980)............................................................................................................... 28

*Campbell v. Advantage Sales & Mktg. LLC*,
    No. 09 Civ. 1430, 2012 WL 1424417 (S.D. Ind. Apr. 24, 2012) ......................................... 28

*Castillo v. Noodles & Co.*,
    No. 16-CV-03036, 2016 WL 7451626 (N.D. Ill. Dec. 23, 2016).......................................... 28

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
    100 F.3d 1041 (1st Cir. 1996).............................................................................................. 19

*Cook v. McCarron*,
    No. 92-CV-7042, 1997 WL 47448 (N.D. Ill. Jan. 30, 1997)................................................. 10

*Curtiss-Wright Corp. v. Helfand*, 6
    87 F.2d 171 (7th Cir. 1982) ................................................................................................. 25

*De La Fuente v. Stokely-VanCamp, Inc.*,
    713 F.2d 225 (7th Cir. 1983) ......................................................................................... 12, 13

*Dennis v. Greatland Home Health Servs., Inc.*,
    591 F. Supp. 3d 320 (N.D. Ill. 2022).................................................................................... 11

*Donovan v. Estate of Fitzsimmons*,
    778 F.2d 298 (7th Cir. 1985) ............................................................................................... 23

*Driver v. AppleIllinois*,
    265 F.R.D. 293 (N.D. Ill. 2010)........................................................................................... 17

*EEOC v. Hiram Walker & Sons, Inc.*,
768 F.2d 884 (7th Cir. 1985) ........................................................... 21, 23

*Elwell v. Univ. Hosps. Home Care Servs.*,
276 F.3d 832 (6th Cir. 2002) ................................................................. 22

*Equity Funding Corp. of America Sec. Litig.*,
603 F.2d 1353 (9th Cir. 1979) ............................................................... 25

*Espenscheid v. DirectSat USA, LLC*,
705 F.3d 770 (7th Cir. 2013) ................................................................. 11

*Felzen v. Andreas*,
134 F.3d 873 (7th Cir. 1998) ................................................................ 8, 9

*Florin v. Nationsbank of Ga., N.A.*,
24 F.3d 560 (7th Cir. 1994) .................................................................. 28

*Gautreaux v. Pierce*,
690 F.2d 616 (7th Cir. 1982) ................................................................. 19

*Hicks v. Great Lakes Home Health Servs.*,
No. 17-CV-12674, 2018 WL 2363959 (E.D. Mich. May 24, 2018) ..................................... 21

*Hispanics United of DuPage Cty. v. Vill. of Addison, Ill.*,
988 F. Supp. 1130 (N.D. Ill. 1997) .......................................................... 18

*Hurt v. Commerce Energy, Inc.*,
No. 12 Civ. 0758, 2014 WL 3735460 (N.D. Ohio July 28, 2014) ................................... 16

*In re "Agent Orange" Prod. Liab. Litig.*,
818 F.2d 179 (2d Cir. 1987) ................................................................. 25

*In re Aon Corp. Wage & Hour Employment Practices Litig.*,
No. 08 Civ. 5802, 2011 WL 248448 (N.D. Ill. Jan. 26, 2011) ................................... 22

*In re AT & T Mobility Wireless Data Servs. Sales Litig.*,
270 F.R.D. 330 (N.D. Ill. 2010) ...................................................... 14, 15, 24

*In re Chocolate Confectionary Antitrust Litig.*,
289 F.R.D. 200 (M.D. Pa. 2012) ............................................................. 15

*In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) .......................................................... 19, 26

iv

*Isby v. Bayh,*
　75 F.3d 1191 (7th Cir. 1996) .................................................................. passim

*Kaufman v. American Express Travel Related Servs. Co., Inc.,*
　264 F.R.D. 438 (N.D. Ill. 2009) ..................................................................... 10

*Kurgan v. Chiro One Wellness Ctrs. LLC,*
　No. 10 Civ. 1899, 2014 WL 642092 (N.D. Ill. Feb. 19, 2014) ........................... 11, 12, 16, 17

*Ladegaard v. Hard Rock Concrete Cutters, Inc.,*
　No. 00 Civ. 5755, 2000 WL 1774091 (N.D. Ill. Dec. 1, 2000) ............................................. 15

*Lukas v. Advocate Health Care Network and Subsidiaries,*
　No. 14 Civ. 2740, 2015 WL 5006019 (N.D. Ill. Aug. 19, 2015) ........................... 11, 12, 13, 16

*Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust,*
　834 F.2d 677 (7th Cir. 1987) ......................................................................... 23

*Matter of Cont'l Ill. Secs. Litig.,*
　962 F.2d 566 (7th Cir. 1992) ......................................................................... 27

*McCue v. MB Financial, Inc.,*
　No. 15 Civ. 0988, 2015 WL 1020348 (N.D. Ill. Mar. 6, 2015) ............................................. 15

*McKinnie v. JP Morgan Chase Bank, N.A.,*
　678 F. Supp. 2d 806 (E.D. Wis. 2009) ............................................................... 15

*Moreno v. Napolitano,* No. 11 Civ. 5452,
　2014 WL 4911938 (N.D. Ill. Sept. 30, 2014) ....................................................... 13

*Muro v. Target Corp.,*
　580 F.3d 485 (7th Cir. 2009) ......................................................................... 13

*Owner-Operator Indep. Drivers Ass'n v. Allied Van Lines, Inc.,*
　231 F.R.D. 280 (N.D. Ill. 2005) ..................................................................... 13

*Patterson v. Stovall,*
　528 F.2d 108 (7th Cir. 1976) ...................................................................... 8, 20

*Pickett v. Simos Insourcing Solutions, Corp.,*
　No. 17-cv-1013, 2017 WL 1433309 (N.D. Ill. April 18, 2017) ............................................. 9

*Redman v. RadioShack Corp.,*
　763 F.3d 622 (7th Cir. 2014) ......................................................................... 28

v

*Resurrection v. Shannon*,
    2013 IL App (1st) 111605 ............................................................................ 2

*Retired Chicago Police Assoc. v. City of Chicago*,
    7 F.3d 584 (7th Cir. 1993) ....................................................................... 14

*Reynolds v. Beneficial Nat'l Bank*,
    288 F.3d 277 (7th Cir. 2002) ................................................................... 23

*Richards v. Eli Lilly & Co.*,
    No. 24-2574, — F.4th —, 2025 WL 2218500 (7th Cir. Aug. 5, 2025) ................ 11

*Rindfleisch v. Gentiva Health Servs., Inc.*,
    962 F. Supp. 2d 1310 (N.D. Ga. 2013) .................................................... 21

*Robles v. Corporate Receivables, Inc.*,
    220 F.R.D. 306 (N.D. Ill. 2004) ............................................................. 14

*Rosario v. Livaditis*,
    963 F.2d 1013 (7th Cir. 1992) ................................................................ 12

*Rubenstein v. Republic Nat'l Life Ins. Co.*,
    74 F.R.D. 337 (N.D. Tex. 1976) ............................................................. 24

*Saltzman v. Pella Corp.*,
    257 F.R.D. 471 (N.D. Ill. 2009) ............................................................. 12

*Scott v. Chipotle Mexican Grill, Inc.*,
    954 F.3d 502 (2d Cir. 2020) ................................................................... 11

*Seiden v. Nicholson*,
    72 F.R.D. 201 (N.D. Ill. 1976) ............................................................... 23

*Smith v. Sprint Commc'ns Co.*,
    387 F.3d 612 (7th Cir. 2004) ................................................................. 10

*Snyder v. Ocwen Loan Servicing, LLC*,
    No. 14 C 8461, 2019 WL 2103379 (N.D. Ill. May 14, 2019) ............ 18, 19, 20, 26

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) ................................................................. 18

*Teamsters Local Union No. 604 v. Inter-Rail Transp., Inc.*,
    No. 02 Civ. 1109, 2004 WL 768658 (S.D. Ill. Mar. 19, 2004) ....................... 28

DM_US 214224612-1.111317.0149

*Uhl v. Thoroughbred Tech. & Telecomms., Inc.,*
     309 F.3d 978 (7th Cir. 2002) ........................................................................ 8

*Urnikis-Negro v. Am. Family Prop. Servs.,*
     616 F.3d 665 (7th Cir. 2010) ...................................................................... 22

*West Virginia v. Chas. Pfizer & Co.,*
     314 F. Supp. 710 (S.D.N.Y. 1970) ............................................................. 22

*Wilkins v. Just Energy Group, Inc.,* ...................................................................
     No. 13 Civ. 5806, 2015 WL 1234738 (N.D. Ill. Mar. 13, 2015) ................ 12

*Wong v. Accretive Health, Inc.,*
     773 F.3d 859 (7th Cir. 2014) ...................................................................... 20

*Zolkos v. Scriptfleet, Inc.,*
     No. 12 Civ. 8230, 2014 WL 7011819 (N.D. Ill. Dec. 12, 2014) ................ 10

## **Rules**

Fed. R. Civ. P. 23 ......................................................................................... passim

## **Other Authorities**

5 James Wm. Moore, *Moore's Federal Practice* (3d ed. 2001) ................................ 29

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions,*
     § 11.22, *et seq.* (4th ed. 2002) .................................................................. passim

*Manual for Complex Litigation* (3d ed. 2000)...............................................................9

DM_US 214224612-1.111317.0149

## INTRODUCTION

Plaintiff Tristin Schimanski ("Named Plaintiff"), brought this putative class and collective action on October 25, 2024, alleging her former employer, Defendant Peak Home Health Care, LLC d/b/a PurposeCare of Illinois – Joliet ("Defendant" or "PurposeCare") misclassified her and other similarly-situated employees as exempt from overtime pay and failed to compensate them for all hours worked in excess of 40 hours per work week, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq*. As a result of extensive settlement negotiations, Named Plaintiff and Defendant (the "Parties") have agreed to settle this hybrid Rule 23 class and FLSA collective action for the significant monetary relief of $1,600,000.0 on behalf 298 members of a proposed settlement class (collectively, "Plaintiffs" or "Settlement Class Members").

The Court should preliminarily approve the Parties' proposed settlement agreement because it is fair, reasonable, and adequate under the governing legal standards and provides reasonable monetary compensation to the Plaintiffs. The Parties respectfully request the Court: (1) provisionally certify the class for settlement purposes only; (2) grant preliminary approval of the proposed Class and Collective Action Settlement Agreement ("Settlement Agreement"), attached as Exhibit A, and plan of settlement administration therein; (3) approve the proposed Notice of Proposed Settlement of Class and Collective Action Lawsuit ("Settlement Notice"), attached as Exhibit B to the Settlement Agreement; (4) authorize mailing of the Settlement Notice in the manner set forth in the Settlement Agreement; (5) schedule a final approval hearing approximately 100 days after the date of preliminary approval; and, (6) enter the proposed Order Certifying Class for Settlement Purposes Only, Granting Preliminary Approval of Class Action Settlement, and Granting Approval of FLSA Settlement ("Preliminary Approval Order"), attached as Exhibit B

1

and filed contemporaneously herewith.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     <u>Procedural History</u>

Named Plaintiff filed this class and collective action lawsuit on October 25, 2024, alleging that PurposeCare misclassified her and other home health Field Clinicians—a group that includes Registered Nurses, Physical Therapists, Occupational Therapists, Speech Therapists, Medical Social Workers and other similarly-designated skilled care positions—as exempt from the overtime requirements of the FLSA and IMWL. (*See, generally*, ECF No. 1.) Named Plaintiff alleges PurposeCare's pay scheme, which compensated all Field Clinicians on an hourly basis for some work and "per visit" basis for health care visits made to patients in their homes, failed to meet the salary or fee basis tests under the FLSA and the IMWL and therefore failed to satisfy the requirements of the professional employee exemption.[1] As a result, Named Plaintiff alleges Field Clinicians were deprived of overtime wages in violation of federal and state wage law.

Named Plaintiff sought to represent herself and similarly situated Field Clinicians as a collective action under the FLSA and a class action under the IMWL and Fed. R. Civ. P. 23. On January 3, 2025, Named Plaintiff and four Opt-In Plaintiffs moved for authorization under the FLSA to send Court-supervised notice of this action to a putative collective of Field Clinicians who worked for PurposeCare during a three-year limitations period. (ECF No. 18.) Thereafter, the Parties agreed to enter an agreement to toll the statute of limitations for the putative members of the collective action to allow the Parties explore early resolution of the action through an exchange of information and mediation. To date, without the benefit of court-ordered notice to the putative

---

[1] The overtime provisions of the IMWL parallel those of the FLSA, including the circumstances under which an employee is exempt from overtime requirements. *See, e.g.*, *Resurrection v. Shannon*, 2013 IL App (1st) 111605, at ¶ 23.

DM_US 214224612-1.111317.0149

members of the collective action, eight Opt-In Plaintiffs have timely filed opt-in consent forms to join the FLSA collective action. (ECF Nos. 2 and 3.)

Defendant denies any liability, wrongdoing, or legal violations of any kind related to the claims and contentions asserted by the Plaintiffs. Defendant maintains that all Field Clinicians were and always have been properly classified as exempt employees and that no overtime pay of any kind is owed to them. Defendant also disputes that a class or collective action is appropriate. Nonetheless, Defendant agrees to settle the claims asserted in this lawsuit on the terms and conditions set forth in the Settlement Agreement to avoid the burden and expense of continued litigation.

### B.    Discovery Completed

Plaintiffs have conducted extensive investigation and case analysis including: (a) interviews and other communications with Named Plaintiff and the eight Opt-In Plaintiffs, four of whom provided sworn testimony in support of Plaintiffs' motion for conditional certification (*see* ECF No. 18-2 through 18-6); (b) the voluminous production of electronically stored information ("ESI") in the form of over 275,000 lines of home visit data from the "Axxess" electronic medical record software, in addition to supplemental data produced in conjunction with settlement; (c) data analysis; and (d) the investigation by counsel regarding the applicable law as applied to the facts discovered regarding the alleged claims and defenses. (Declaration of Teresa M. Becvar ("Becvar Decl.") ¶ 7, attached as Exhibit C.)

### C.    Settlement Negotiations

The Parties agreed to engage in mediation early in the case, before initiating discovery and before any substantive issues were decided. On April 9, 2025, the Parties attended a full-day mediation overseen by a private mediator, Dennis Clifford, Esq., who is an experienced wage and

3

hour mediator and an active member on the American Arbitration Association's Mediation and Arbitration Panels for employment law matters. (Becvar Decl. ¶ 8.) As a result of the mediation, the Parties reached agreement on the major terms of a Rule 23 class and collective action settlement. (*Id.*) Over the next four months, the Parties negotiated the remaining terms of the settlement, which required attending an additional short mediation session with Mr. Clifford on July 7, 2025. (*Id.*) The resulting formal Settlement Agreement was executed in full on August 18, 2025. (*Id.*) This settlement provides substantial monetary relief for 298 Class Members, inclusive of the Named Plaintiff, for a class period spanning 46 months. (*Id.* ¶ 9.) The Settlement Class is defined as follows:

> [I]ndividuals who have been employed by Peak Home Health Care, LLC d/b/a PurposeCare of Illinois – Joliet as exempt-classified home health Registered Nurses, Physical Therapists, Occupational Therapists, Speech Therapists, and Medical Social Workers and were paid on a "per visit" basis during the period from October 25, 2021 to [August 18, 2025].

(Settlement Agreement ¶ 16.)

## II.     SUMMARY OF THE SETTLEMENT TERMS

The terms of this settlement are contained in the Settlement Agreement. There are no undisclosed side agreements between the Named Plaintiff and Defendant. (Becvar Decl. ¶ 10.)

### A.     <u>The Settlement Amount</u>

To avoid the time and expense of continued litigation and risks and delays inherent in continuing the litigation, the Parties arrived at settlement in the gross Settlement Amount of $1,600,000.00. (Settlement Agreement ¶ 29.) The Settlement Amount covers: (1) all attorneys' fees and litigation costs in connection with Class Counsel's representation of Named Plaintiff and the Class Members, including all attorneys' fees and costs that may arise in the future in connection with this Settlement Agreement, including, without limitation, seeking Court approval of the

Settlement Agreement, and the notice process; (2) all Administrative Fees incurred by the Settlement Administrator; (3) all payments to the Class Members; and (4) a service payment to the Named Plaintiff ("Service Payment"). (*Id.*) Any unclaimed funds resulting from uncashed checks will be distributed as a *cy pres* equally between the American Nurses Foundation, the Foundation for Physical Therapy Research, and the Fund to Promote Awareness of Occupational Therapy. (*Id.* ¶ 59(g).)

### B.   Payments to Class Members

No action is required by Class Members to receive a settlement payment. (Settlement Agreement ¶ 46.) Direct payments will be made to every Class Member who does not opt out of the settlement.

### C.   Release

The Settlement Agreement provides that, upon entry of an order approving the settlement by the Court, the Named Plaintiff and Class Members who have not validly and timely opted-out of the settlement will release all state, local, and common law wage and hour and wage payment claims. (Settlement Agreement. ¶ 61.) In addition, the Named Plaintiff and Class Members who timely negotiate their settlement checks will consent to join the settlement collective action, if they have not done so already, and release all wage and hour claims under the FLSA. (*Id.*)

### D.   Allocation Formula

The computation of the payments to Class Members will be based on data from Axxess electronic medical record software and other employee record systems provided by Defendant. (Settlement Agreement ¶ 44.) After deducting anticipated attorneys' fees, litigation costs, settlement administration expenses, and the service payment, the net Settlement Amount will be allocated among the Class Members on a proportionate basis based on each Class Member's

individual number of visits completed during the Class Period and his or her most recent "per visit" pay rate for a routine visit, subject to a minimum payment amount of $300.00. (*Id.* ¶ 41.) In addition, all Class Members whose visit data from the Axxess reflect that they performed more than 25 visits during at least one workweek in the Class Period shall receive enhanced settlement payments calculated by adding an additional 50% of their proportionate share, provided that no enhancement shall exceed a cap of $5,000.00 per person. (*Id.* ¶ 42.)

This allocation method provides compensation for over 17,000 workweeks for the 298 Class Members during a class period spanning 46 months and results in an average settlement distribution of approximately $3,350.00 per member of the Settlement Class, net of anticipated attorneys' fees, litigation costs, settlement administration expenses, and the service payment. (Becvar Decl. ¶¶ 9, 11.)

### E.   Service Payment to Named Plaintiff

At the final approval stage, Plaintiffs will apply for Court approval of a Service Payment to the Named Plaintiff paid out of the Settlement Amount that does not exceed $10,000.00 as payment for her efforts on behalf of the class, including assisting Class Counsel with the prosecution of the lawsuit. (Settlement Agreement ¶ 57.)

### F.   Attorneys' Fees and Litigation Costs

Pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), along with their Motion for Final Approval of the Settlement, Class Counsel will petition for Court approval of an award of attorneys' fees and costs. Class Counsel will seek an award of attorneys' fees and costs of 36% of the Settlement Amount, or $576,000.00, in addition to litigation costs in an amount to be determined but estimated not to exceed $6,000.00. (Settlement Agreement ¶ 57.) Class Counsel will also seek an additional amount as reimbursement for settlement administration expenses to be

6

determined but estimated not to exceed $10,000.00. (*Id*.) The Parties agree that these sums are fair and reasonable in light of all the facts and circumstances, including the past and anticipated future time spent by Class Counsel, their hourly rates, the risks undertaken, and the results achieved.

### G. Settlement Administrator

The Parties have agreed to retain Analytics Consulting LLC as the Settlement Administrator. (Settlement Agreement ¶ 27.) The Settlement Administrator's fees for administration and distribution of the settlement award will be paid from the Settlement Amount as set forth above. (*Id.* ¶ 57.)

## III. CLASS ACTION SETTLEMENT PROCEDURE

The well-defined class action settlement procedure includes three distinct steps:

1. Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2. Dissemination of mailed and/or published notice of settlement to all affected class members; and

3. A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (*"Newberg"*), § 11.22, *et seq.* (4th ed. 2002). This process safeguards class members' procedural due process rights and enables the Court to fulfill its role as guardian of class interests. With this motion, the Parties request that the Court take the first step—granting preliminary approval of the Settlement Agreement, approving the proposed Settlement Notice, and ordering its distribution.

Once this Court has granted preliminary approval, the deadlines for providing notice, opting out of the settlement, and submitting objections to the proposed settlement will begin to run. The schedule set forth below, which is subject to the timing of actions to be taken by the

7

Parties and the Court in this case, provides the Court with an approximate timeline of the various steps in the settlement approval process under the Settlement.

| | Event | Timing |
|---|---|---|
| 1. | Defendant to Provide Class Member Information and Class Counsel to Provide Settlement Allocation to Settlement Administrator | Within 7 Days After Entry of Preliminary Approval Order |
| 2. | Settlement Administrator to Issue Settlement Notice | Within 10 Days After Receiving Class Member Data |
| 3. | Deadline for Opting Out or Objecting to Settlement | 45 Days After the Issuance of Settlement Notice |
| 4. | Final Approval Hearing | Approximately 100 Days After Preliminary Approval |
| 5. | Effective Date | Date on Which the Time to File Any Appeal Concerning the Final Approval of the Settlement Agreement Has Expired or the Date Any Filed Appeals Are Resolved |
| 6. | Defendant to Fund the Settlement | Within 7 Days After Effective Date |
| 7. | Settlement Administrator to Distribute Funds to Named Plaintiff, Class Members, and Class Counsel | Within 14 Days After Effective Date |

## IV.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) (internal citations omitted); *see also Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002) ("Federal courts favor settlement, so the district court's inquiry into the settlement structure is limited to whether the settlement is lawful, fair, reasonable and adequate.") (citing *Isby*, 75 F.3d at 1198–99); *Newberg* § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). "In reviewing a proposed settlement the court should consider the judgment of counsel and the presence of good faith bargaining." *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Courts usually refuse to substitute their business judgment for that of counsel, absent fraud or overreaching. *Id.*

A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 Civ. 2898, 2012 WL 651727, at *10 (N.D. Ill. Feb. 28, 2012) (internal citation and quotation marks omitted).

The dismissal or compromise of any class action requires the Court's approval. Fed. R. Civ. P. 23(e). The decision to approve a proposed settlement is committed to the Court's sound discretion. *See, e.g.*, *Pickett v. Simos Insourcing Solutions, Corp.*, No. 17-cv-1013, 2017 WL 1433309, at *1 (N.D. Ill. April 18, 2017). The approval of any proposed class action settlement is typically exercised in the two-step process of "preliminary" and "final" approval. *Manual for Complex Litigation* § 30.41 (3d ed. 2000). Although the legal standards for preliminary and final approval overlap, preliminary approval and notice to the class requires only a threshold finding that the court will likely be able to (1) certify the class for purposes of judgment on the settlement and (2) approve the settlement as fair, reasonable, and adequate after notice to the class. Fed. R. Civ. P. 23(e)(1)(B).

At the preliminary approval stage, the court's task is to "determine whether the proposed settlement is within the range of possible approval." *Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) (internal citation and quotation marks omitted) (noting that at the final fairness hearing, the court will "adduce all information necessary to enable [it] intelligently to rule on whether the proposed settlement is fair, reasonable, and adequate"), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also Newberg* § 11.25 (noting that "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness … and appears to fall within the range of possible approval," the court should permit notice of the settlement to be sent to class members) (citations omitted). "The

9

purpose of the initial hearing is to ascertain whether there is any reason to notify the class members of the proposed settlement and proceed with a fairness hearing." *Cook v. McCarron*, No. 92-CV-7042, 1997 WL 47448, at *7 (N.D. Ill. Jan. 30, 1997) (citing *Armstrong*, 616 F.2d at 314). Once the settlement is found to be "within the range of possible approval" at the initial fairness hearing, the final approval hearing is scheduled and notice is provided to the class. *Id.*

## A. The Court Should Provisionally Certify the Settlement Class Under Rule 23 and the FLSA.

"Before addressing the substantive provisions of the Settlement Agreement, the Court must first determine whether the proposed class can be certified" for settlement purposes. *Kaufman v. American Express Travel Related Servs. Co., Inc.*, 264 F.R.D. 438, 441–42 (N.D. Ill. 2009) (citation omitted). Class certification is an exercise of judicial discretion, and "[t]he fact that the parties have reached a settlement is a relevant consideration in the class-certification analysis." *Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 8230, 2014 WL 7011819, at *1 (N.D. Ill. Dec. 12, 2014) (citing *Smith v. Sprint Commc'ns Co.*, 387 F.3d 612, 614 (7th Cir. 2004)); *see also Amchem Prods., Inc.* v. *Windsor*, 521 U.S. 591, 620 (1997) ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, *see* Fed. R. Civ. P. 23(b)(3)(D), for the proposal is that there be no trial").

The Parties have stipulated to class certification under Rule 23 and maintenance of this matter as a collective action under Section 216(b) of the FLSA and request that the Court certify the Settlement Class defined above for settlement purposes only. (Settlement Agreement ¶ 33.) When presented with a request to preliminarily approve a proposed class settlement, a court's evaluation may be more relaxed than when considering entry of a final order binding all class members to the settlement's terms. Nevertheless, the Court must still determine whether the

10

proposed Settlement Class satisfies the requirements of Rule 23 and the FLSA. As demonstrated below, no reason exists to refrain from provisionally certifying, for settlement purposes, the proposed Settlement Class. Indeed, courts in this district have granted *contested* motions for Rule 23 and final FLSA certification in class actions prosecuted by Class Counsel involving virtually indistinguishable claims, legal theories and facts. *See Dennis v. Greatland Home Health Servs., Inc.*, 591 F. Supp. 3d 320, 324 (N.D. Ill. 2022); *Lukas v. Advocate Health Care Network and Subsidiaries*, No. 14 Civ. 2740, 2015 WL 5006019 (N.D. Ill. Aug. 19, 2015).

Further, because the standard for Rule 23 class certification is more onerous than required under the FLSA, the analysis set out below supports both class and collective treatment of Plaintiffs' claims for settlement purposes. *See Richards v. Eli Lilly & Co.*, No. 24-2574, — F.4th —, 2025 WL 2218500, at *9 (7th Cir. Aug. 5, 2025) (citing *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 520 (2d Cir. 2020) (the FLSA "imposes a lower bar than Rule 23")); *cf. Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013) (the case law "has largely merged the standards" between Rule 23 and an FLSA collective action).

Rule 23(a)(1). The first requirement asks whether the proposed class is so numerous that joinder is impracticable. Although the rule provides no firm number, courts have held that numerosity can be satisfied where more than 40 putative class members exist. *See, e.g.*, *Kurgan v. Chiro One Wellness Ctrs. LLC*, No. 10 Civ. 1899, 2014 WL 642092, at *5 (N.D. Ill. Feb. 19, 2014). Here, 298 employees comprise the putative Rule 23 class. Accordingly, Rule 23(a)(1)'s numerosity requirement is met.

Rule 23(a)(2). The next question is whether there are questions of law or fact common to the class. "Commonality requires that there be at least one question of law or fact common to the class." *Barragan v. Evanger's Dog & Cat Food Co.*, 259 F.R.D. 330, 334 (N.D. Ill. 2009)

(quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). Plaintiff maintains that a common question may be shown where claims of individual members are based on the common application of a statute or where class members are aggrieved by the same or similar conduct. *Kurgan*, 2014 WL 642092 at *6. Plaintiff further maintains that at least two common issues exist in this case, as all of the proposed class members were subjected to the same potentially unlawful pay practices of Defendant in: (1) classifying Field Clinicians as exempt from the overtime requirements of the IMWL under their combined per-visit and hourly pay scheme; and (2) failing to make or maintain records of all time worked by Field Clinicians. Indeed, the legality of Defendant's uniform pay policies is the focus of the litigation. *Wilkins v. Just Energy Group, Inc.*, No. 13 Civ. 5806, 2015 WL 1234738, at *11 (N.D. Ill. Mar. 13, 2015) (commonality existed where employer uniformly treated its workers as outside the scope of the IMWL based on its position that the workers fell within the outside salesperson exemption). "There can be little doubt that a common issue is present in this case—namely, the question of whether a mixed per-visit and per-hour pay arrangement allows [a defendant] to lawfully classify Clinicians as exempt under the FLSA." *Lukas*, 2015 WL 5006019 at *5. Therefore, Plaintiffs satisfy the commonality requirement for the Settlement Class.

Rule 23(a)(3). A "'plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the same legal theory.'" *Rosario*, 963 F. 2d at 1018 (quoting *De La Fuente v. Stokely-VanCamp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). Rule 23(a)'s typicality requirement should be "liberally construed." *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 479 (N.D. Ill. 2009). So long as "the representative party's claim arises from the same course of conduct that gives rise to the claims of other class members and all of the claims are based on the same legal theory," typicality is satisfied. *Id.* (citation omitted); *see also Owner-*

12

*Operator Indep. Drivers Ass'n v. Allied Van Lines, Inc.*, 231 F.R.D. 280, 282 (N.D. Ill. 2005) (typicality is a "low hurdle" requiring "neither complete coextensivity nor even substantial identity of claims"). Rule 23(a)(3) "'primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large.'" *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (quoting *De La Fuente,* 713 F.2d at 232).

Plaintiffs assert that Named Plaintiff's claims are typical of the claims of other class members because they arise from the same course of action of Defendant which applies to all Field Clinicians: the alleged failure to pay overtime because of a challenged classification as exempt. *See Lukas*, 2015 WL 5006019 at *4 (typicality met where "[t]he practice or course of conduct Plaintiffs complain of is [defendant]'s policy of classifying Clinicians as exempt yet paying them with a combination of fee-based and hourly rates"). While there may be immaterial factual differences between claims of the Named Plaintiff and those of other putative class members, their claims are nevertheless based on the same legal theory. *Moreno v. Napolitano*, No. 11 Civ. 5452, 2014 WL 4911938, at *9 (N.D. Ill. Sept. 30, 2014) ("[S]imilarity of legal theory may control even in the face of differences of fact") (internal quotations omitted). Thus, as stated by this Court in *Lukas*, the claims of the class representative "are clearly typical of those of the claims of other class members." *Lukas*, 2015 WL 5006019 at *4.

Rule 23(a)(4). The requirement that "the representative parties … fairly and adequately protect the interests of the class … serves to uncover conflicts of interest between the named parties and the class they seek to represent." *Amchem Prods.*, 521 U.S. at 625. This requirement "tends to merge with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining … whether the Plaintiff's claim and the class claims are so

DM_US 214224612-1.111317.0149

interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* at 626 n.20. Because of the unique nature of the class action device, "[t]he adequacy-of-representation requirement 'is composed of two parts: the adequacy of the plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members.'" *In re AT & T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 343 (N.D. Ill. 2010) (quoting *Retired Chicago Police Assoc. v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993)) (further internal quotations and citation omitted).

"A class representative must … be part of the class and possess the same interest and suffer the same injury as the class members." *In re AT&T Mobility Wireless Servs.*, 270 F.R.D. at 343 (internal quotations and citation omitted). "This requires the district court to ensure that there is no inconsistency between the named parties and the class[,] … [because a] class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Id.* (internal quotations and citations omitted).

The proposed class representative, Tristin Schimanski, worked as a Field Clinician for PurposeCare, and her claims are based on the same allegedly unlawful pay scheme as the rest of the proposed class. She has shown her commitment to vigorously prosecuting litigation by assisting Class Counsel in preparing the Complaint and actively participating in settlement negotiations. The proposed class representative has also provided invaluable information and testimony and otherwise assisted Class Counsel in understanding the claims of the class and Defendant's defenses. This qualifies Named Plaintiff as a "conscientious representative plaintiff" and satisfies the adequacy of representation requirement. *Robles v. Corporate Receivables, Inc.*, 220 F.R.D. 306, 314 (N.D. Ill. 2004).

The class representative does not have any interests antagonistic to the class. Rather, she has the same interests and has suffered the same damages for alleged unpaid overtime as the proposed class members. *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00 Civ. 5755, 2000 WL 1774091, at *5–6 (N.D. Ill. Dec. 1, 2000) (no antagonistic interest where plaintiff alleged same violation and remedy as the rest of the class).

Likewise, Class Counsel have fairly and adequately protected the interests of the class. Plaintiffs' attorneys are highly experienced and have successfully acted as representative counsel in numerous wage and hour class actions, as well as other complex class actions, in federal and state courts in the Northern District of Illinois and throughout the United States, including class actions involving virtually identical claims. (*See* Becvar Decl., Attachment A (Stephan Zouras, LLC Firm Resume).) "Plaintiff's [C]ounsel have invested substantial time and resources in this case by investigating the underlying facts, researching the applicable law, and negotiating a detailed settlement." *In re AT&T Mobility Data Servs.*, 270 F.R.D. at 344 (citation omitted).

Class Counsel invested considerable time and resources and reviewed and analyzed Axxess data provided by Defendant before the settlement was reached. Indeed, this exchange of information, the use of a mediator, and Plaintiffs' counsel's independent investigation, as well as arm's-length negotiations with Defendant, all demonstrate Plaintiffs' counsel's pursuit of the interests of the class and their determination to avoid even an appearance of collusion with Defendant. *See McCue* v. *MB Financial, Inc.*, No. 15 Civ. 0988, 2015 WL 1020348, at *2 (N.D. Ill. Mar. 6, 2015) (citing *McKinnie* v. *JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 813 (E.D. Wis. 2009)). In short, Named Plaintiff and her counsel have demonstrated that they "are fully capable of litigating this case." *In re Chocolate Confectionary Antitrust Litig.*, 289 F.R.D. 200, 218 (M.D. Pa. 2012). Accordingly, the adequacy requirement is satisfied.

Rule 23(b)(3). Once Rule 23(a) is satisfied, Rule 23(b)(3) requires the Court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 620.

Here, Plaintiff contends that there are numerous common questions of law and fact that predominate over any questions that may affect individual Class Members so as to render class settlement appropriate. As explained above, Plaintiff asserts that Class Members were uniformly subject to a pay scheme that compensated them on an hourly basis for some work and on a per-visit basis for other work. The question of the legality of this pay scheme and whether Plaintiffs are entitled to unpaid overtime can therefore be determined for the entire class in a single adjudication, without considering individualized issues. *See Lukas*, 2015 WL 5006019 at *6 ("Whether a hybrid pay system renders an employee ineligible for exemption from the FLSA overtime provisions is therefore not only a common issue underlying the claims of all class members, but in many ways a dispositive one."); *Hurt v. Commerce Energy, Inc.*, No. 12 Civ. 0758, 2014 WL 3735460, at *2–3 (N.D. Ohio July 28, 2014) ("Here, the issue is not the minor individual differences between the [members of the class], but rather the Defendants' uniform treatment of [them] … – both liability and defenses to liability will be appropriately made on a classwide basis."); *Kurgan*, 2014 WL 642092 at *9 ("Where, as here, the focus is on the liability-imposing conduct of the defendant that is identical for all putative plaintiffs, the predominance element is satisfied."). Accordingly, the predominance prong of Rule 23(b)(3) is satisfied for

purposes of provisional certification of the Settlement Class.

Rule 23(b)(3) lists four factors that the Court should consider in taking into account whether a class action is superior to other methods of adjudicating this action: (a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action. Fed. R. Civ. P. 23 (b)(3)(A)-(D).

An assessment of the Rule 23(b)(3) "superiority" factors shows that a class action is the preferred procedure in this case. The superiority requirement is satisfied when "a class action would achieve economies of time, effort, and expense, and promote … uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Driver v. AppleIllinois*, 265 F.R.D. 293, 304 (N.D. Ill. 2010) (quoting *Amchem*, 521 U.S. at 615).

The Settlement Agreement provides Class Members with the ability to obtain prompt, predictable, and certain relief, and it contains well-defined administrative procedures to ensure due process. This includes the right of Class Members who may be dissatisfied with the settlement to object or exclude themselves from it. Judicial economy and efficiency, as well as consistency of judgments, would be achieved through the certification of the class. *See Kurgan*, 2014 WL 642092 at *9. The settlement relieves the substantial judicial burdens that would be caused by repeated adjudication of the same issues in multiple individualized trials against Defendant by going forward with this case as a class action. And because the Parties seek to resolve this case through a settlement, any difficulties of managing a class action are vitiated by the facts of this settlement.

In sum, because the requirements of Rule 23(a) and Rule 23(b)(3) and FLSA § 216(b) are satisfied, and thus certification of the proposed Settlement Class and maintenance of this matter as a collective action under the FLSA for purposes of settlement are appropriate.

### B. The Settlement Is Fair, Reasonable, and Adequate.

A court generally will preliminarily approve notice of a proposed class settlement if the parties have made a showing that it is likely to be approved as "fair, reasonable, and adequate." Fed. R. Civ. P. 23 (e)(1); *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006). Although the court's task on a motion for preliminary approval is merely to perform an "initial evaluation," *Newberg* § 11.25, to determine whether the settlement falls within the range of possible final approval, or "the range of reasonableness," *id.* at § 11.26, it is useful to consider the criteria on which the Court will ultimately judge the settlement.

In making these determinations, courts consider four factors: (1) the adequacy of representation by class representatives and class counsel; (2) whether the settlement was negotiated fairly; (3) the adequacy of the relief provided to the class; and (4) whether class members were treated equitably relative to each other. Fed. R. Civ. P. 23 (e)(2); *Snyder v. Ocwen Loan Servicing, LLC*, No. 14 C 8461, 2019 WL 2103379, at *4 (N.D. Ill. May 14, 2019). A court must view the settlement in its entirety, rather than focus on an individual component. *Isby*, 75 F.3d at 1199. Finally, a strong presumption of fairness exists when the settlement is the result of extensive arm's-length negotiations. *Hispanics United of DuPage Cty. v. Vill. of Addison, Ill.*, 988 F. Supp. 1130, 1150 (N.D. Ill. 1997). All of these factors weigh in favor of approval of the Settlement Agreement and preliminary approval.

### 1. The Class is Adequately Represented by the Class Representative and Class Counsel (First Factor).

Courts are "entitled to rely heavily on the opinion of competent counsel." *Gautreaux v.*

*Pierce*, 690 F.2d 616, 634 (7th Cir. 1982) (quoting *Armstrong*, 616 F.2d at 325); *see also Isby*, 75 F.3d at 1200. Class Counsel are competent and experienced in class actions, particularly wage and hour class actions, and are familiar with the strengths and weaknesses of the claims and defenses. (Becvar Decl. ¶¶ 3, 5, and 13.) Using that litigation experience and their intimate knowledge of the facts of the case and the legal issues facing the Class Members, Class Counsel were capable of making, and did make, well-informed judgments about the value of the claims, the time, costs, and expense of protracted litigation, discovery, and appeals, and the adequacy of the settlement reached. (*Id.* ¶ 13.)

As set forth above, the class representative has demonstrated she qualifies as a conscientious representative plaintiff through her commitment to vigorously prosecuting the litigation thus far. *Snyder*, 2019 WL 2103379 at *4; *In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 31–32 (E.D.N.Y. 2019). Further, she has no interests that are antagonistic to the interests of the Settlement Class. *Id.* This factor therefore weighs in favor of preliminary approval.

### 2. The Settlement Was Negotiated Fairly (Second Factor).

There is plainly no collusion or fraud with respect to this proposed settlement, which was reached after intense negotiation with the dedicated assistance and oversight of a well-respected private mediator, Dennis Clifford, Esq. As a distinguished commentator on class actions has noted:

> There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval.

*Newberg* § 11.41 at 11-88; *see also City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). In this case, as explained above, the terms of the settlement were reached during extensive arm's-length negotiations by experienced counsel after thorough investigation

and data analysis. Therefore, this Court should find that an initial presumption of fairness exists to support preliminary approval of the settlement.

### 3. The Settlement Amount Adequately Provides Relief to the Class (Third Factor).

Courts have held that the six factors identified in *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014), subsume the considerations of the third factor under Rule 23(e)(2). *Snyder*, 2019 WL 2103379 at *5. Those factors include: (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed. *Wong*, 773 F.3d at 863.

### i. The Settlement Amount Is Substantial Given the Strengths of Plaintiffs' Claims and Attendant Risks.

Defendant has agreed to settle this case for $1,600,000.00 for a total of 298 Field Clinicians in the combined class and collective action. (Becvar Decl. ¶ 9.) The Settlement Amount, therefore, represents significant value for these Class Members—an average sum of approximately $3,350.00 per Field Clinician, net of anticipated attorneys' fees, litigation costs, settlement administration expenses, and the service payment—particularly given the attendant risks of litigating the merits of the case through Rule 23 and FLSA class certification, summary judgment proceedings and/or trial, and any appeals of decisions on those matters. (*Id.* ¶ 11.)

In evaluating the strength of the plaintiff's case on the merits as compared to the amount of the proposed settlement, courts refrain from reaching conclusions on issues which have not been fully litigated. *Patterson*, 528 F.2d at 114 (collecting cases). Courts "have been admonished to refrain from resolving the merits of the controversy of making a precise determination of the

parties' respective legal rights." *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985) ("*Hiram Walker*"). Because "[t]he essence of settlement is compromise," *id.*, courts should not reject a settlement "solely because it does not provide a complete victory to the plaintiffs." *Isby*, 75 F.3d at 1200; *see also Armstrong*, 616 F.2d at 315 (noting that "the essence of a settlement is compromise[,] an abandonment of the usual total-win versus total-loss philosophy of litigation in favor of a solution somewhere between the two extremes"). Parties to a settlement benefit by immediately resolving the litigation and receiving "some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory … Thus, the parties to a settlement will not be heard to complain that the relief afforded is substantially less than what they would have received from a successful resolution after trial." *Hiram Walker*, 768 F.2d at 889 (internal citations and emphasis omitted).

The outcome of this litigation is far from certain. On liability, Plaintiffs would have to overcome Defendant's defense that Plaintiffs were exempt professional employees under the FLSA and IMWL by showing that Defendant's pay scheme, which uniformly compensated Field Clinicians on a combined "per visit" and hourly basis, failed to meet the salary or fee basis tests under the FLSA. Few courts have addressed this precise issue, and the ones that have are non-precedential in this district. *See Hicks v. Great Lakes Home Health Servs.*, No. 17-CV-12674, 2018 WL 2363959, at *4 (E.D. Mich. May 24, 2018) (granting partial summary judgment for home care clinician on the grounds that a hybrid fee and hourly basis pay plan does not satisfy the requirements for exemption under the FLSA); *Rindfleisch v. Gentiva Health Servs., Inc.*, 962 F. Supp. 2d 1310, 1323 (N.D. Ga. 2013) (granting summary judgment for collective class of home care clinicians on the grounds that their non-visit fees were improperly based on the amount of time it takes to complete a non-visit activity, *i.e.*, on an hourly basis); *Elwell v. Univ. Hosps. Home*

21

*Care Servs.*, 276 F.3d 832, 838–39 (6th Cir. 2002) (a compensation plan that combines fee payments and hourly pay does not qualify as a fee basis because it ties compensation, at least in part, to the number of hours or days worked and not on the accomplishment of a given single task). Thus, as in any complex action, the Plaintiffs generally face uncertainties. *Cf.*, *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743–44 (S.D.N.Y. 1970) ("[i]t is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced").

In addition, a trial on the merits would involve significant risks for Plaintiffs as to damages. Bona fide disputes exist as to whether Plaintiffs could credibly establish the hours of overtime they worked and the weeks in which they worked overtime. Further, Plaintiffs would have to overcome arguments that the fluctuating workweek method of calculating overtime premiums (FWW), which results an overtime multiplier of .5 times the regular hourly rate, should apply. *See Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665, 681 (7th Cir. 2010); *In re Aon Corp. Wage & Hour Employment Practices Litig.*, No. 08 Civ. 5802, 2011 WL 248448, at *3 (N.D. Ill. Jan. 26, 2011) (holding that the FWW method of calculating overtime premiums for salaried employees using a half-time rate applied to the plaintiffs' misclassification claims).

In light of these risks, the settlement provides far more than "a fraction of the potential recovery." Assuming the FWW method of calculating overtime is not applied, which remains a disputed and undecided question, Class Counsel estimate that the settlement amount distributed directly to the Class Members represents 43% of the Settlement Class's likely maximum potential claim for overtime wages, exclusive of liquidated damages under the FLSA and statutory damages under the IMWL. (Becvar Decl. ¶ 12.) Though not providing the maximum possible value that conceivably might be awarded later at trial, assuming Plaintiffs achieved final FLSA and Rule 23

22

class certification and overcame Defendant's anticipated summary judgment motion, the settlement provides substantial monetary benefits now, without the time, difficulties, expense, and uncertainty of further litigation and without the years of delay any appeal might cause. *See Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (a settlement is fair "if it gives [plaintiffs] the expected value of their claim if it went to trial, net the costs of trial"); *Hiram Walker*, 768 F.2d at 891 (settlement approved where "there [was] no showing that the amounts received by the beneficiaries were totally inadequate").

Weighing the benefits of the settlement against the risks associated with proceeding in the litigation, the settlement amount is reasonable. This factor therefore weighs in favor of preliminary approval.

### ii.   Litigation Through Trial and Appeals Would Be Complex, Costly, and Long.

By reaching a favorable settlement early in the litigation, before certification proceedings, dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. "[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985). Although Class Counsel believe Plaintiffs' case is strong, it is subject to considerable risks and costs if the case is not settled.

Continued litigation carries with it a decrease in the time value of money, for "[t]o most people, a dollar today is worth a great deal more than a dollar ten years from now." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002); *see also Donovan*, 778 F.2d at 309 n.3; *Seiden v. Nicholson*, 72 F.R.D. 201, 208 (N.D. Ill. 1976) ("If this case had been litigated to conclusion, all that is certain is that plaintiffs would have spent a large amount of time, money and

23

effort.").

Here, further litigation would certainly result in FLSA conditional certification motion practice, extensive written discovery, dozens of depositions, a motion for Rule 23 class certification and/or FLSA decertification proceedings, and summary judgment practice on liability, and would prolong the risk, time, and expense associated with a complex trial, or trials, for damages. These costs of further litigation are considerable in terms of both time and money but would not reduce the risks that litigation holds for the class. *See Isby*, 75 F.3d at 1199. The proposed settlement, on the other hand, provides immediate benefits.

Under these circumstances, the benefits of a guaranteed recovery today as opposed to an uncertain result in the future, are readily apparent. As one court noted, "[t]he bird in the hand is to be preferred to the flock in the bush and a poor settlement to a good litigation." *Rubenstein v. Republic Nat'l Life Ins. Co.*, 74 F.R.D. 337, 347 (N.D. Tex. 1976). This factor therefore weighs in favor of preliminary approval.

### iii. There Has Been No Opposition to the Settlement, and Competent Counsel for All Parties Endorse the Agreement.

Because the Parties have not yet sent the Settlement Notice, it is premature to fully assess the factor addressing the support of the class. *In re AT&T Mobility Wireless Data Servs.*, 270 F.R.D. at 349. However, the Named Plaintiff supports the settlement, as do Class Counsel, as set forth above, and Defendant and its counsel. At this preliminary stage, Class Counsel is unaware of any opposition to the settlement. (Becvar Decl. ¶ 14.) The Court should more fully analyze this factor after notice issues and Class Members are given the opportunity to object.

### iv. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly.

This hybrid class and collective action has been resolved less than a year after it was

24

initiated. This period involved research, analysis, investigation, and the production of ESI in the form of over 275,000 lines of home visit data from Axxess, among other things. (*See* Becvar Decl. ¶ 7.) Sufficient information has been exchanged such that Class Counsel could fairly and fully evaluate the value of the settlement. (Becvar Decl. ¶ 13.) Given the significant amount of time and resources spent by the Parties exchanging information and advancing settlement negotiations, this factor favors preliminary approval.

### 4. Class Members Were Treated Equitably Relative To Each Other (Fourth Factor).

"District courts enjoy broad supervisory powers over the administration of class-action settlements to allocate the proceeds among the claiming class members … equitably." *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 179, 181 (2d Cir. 1987) (internal quotes and citation omitted). The allocation of a settlement fund among competing claimants is one of the court's traditional equitable functions. *Curtiss-Wright Corp. v. Helfand*, 687 F.2d 171, 174 (7th Cir. 1982). In exercising its equitable power, a court has the discretion to favor those class members who have relatively stronger legal claims. *See Equity Funding Corp. of America Sec. Litig.*, 603 F.2d 1353, 1366–67 (9th Cir. 1979) (upholding a plan of allocation in which those class members with stronger claims received more than those with weaker claims).

In determining the allocation method, the Parties considered, among other things, the individual number of weeks the Class Members worked during the Class Period, their most recent "per visit" pay rate, and the data produced from Axxess. (Settlement Agreement ¶ 41.) To determine an equitable distribution among class members with claims of differing strengths, the allocation formula provides enhanced settlement payments of an additional 50% of their proportionate share to all Class Members whose visit data from the Axxess reflect they performed more than 25 visits during at least one workweek in the Class Period. (*Id.* ¶ 42.)

The proposed settlement thus ensures that the Class Members who wish to participate in the settlement will receive significant monetary relief. *Snyder*, 2019 WL 2103379 at *5 (finding class members treated the same where each is entitled to a single payment); *In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 47 (finding *pro rata* distribution scheme sufficiently equitable). Further, the Agreement provides for an effective opt-out mechanism for class members to retain their federal and state wage and hour claims should they seek the opportunity to pursue an individual claim. This factor also weighs in favor of preliminary approval.

The factors all weigh in favor of issuing preliminary approval of the settlement and thus the settlement, on its face, is fair, reasonable, and adequate. *See Isby*, 75 F.3d at 1198, 1200. In addition, "the proposed settlement is within the range of possible approval" and should be submitted to the Class Members for their consideration. *Armstrong*, 616 F.2d at 314 (internal quotation omitted). In the unlikely event that a substantial number of objectors come forward with meritorious objections, the Court may reevaluate its determination at the Final Approval Hearing.

## V. THE SETTLEMENT NOTICE PLAN AND AWARD DISTRIBUTION PROCESS ARE APPROPRIATE

The content of the proposed Settlement Notice, which is attached to the Settlement Agreement as Exhibit B, fully complies with due process and Fed. R. Civ. P. 23. Under Rule 23(c)(2)(B), notice must provide:

> the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort… The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23 (c)(2)(B).

The detailed information in the proposed Settlement Notice far exceeds this minimum and fully complies with the requirements of Rule 23(c)(2)(B).

The Settlement Agreement provides that the Settlement Notice will sent by email and first-class U.S. Mail by the Settlement Administrator to each Class Member within ten days of receiving the Class List from Defendant. (Settlement Agreement ¶ 45.) The Settlement Administrator must take reasonable steps to obtain the correct addresses of any Class Member whose Notice is returned as undeliverable and must attempt re-mailing. (*Id.*) As discussed above, the proposed Settlement Notice contains information about how to participate in the settlement, exclude oneself from the settlement, or object to the settlement. (Settlement Agreement, Ex. B (Settlement Notice).) Class Members will have forty-five days from the mailing of the Settlement Notice to opt out or to comment on or object to the settlement. (Settlement Agreement ¶¶ 47, 51.) The Settlement Notice further explains that, after the Settlement Agreement receives final approval and after any appeals, Class Members who do not timely opt out will release both their state and local wage and hour claims. (Settlement Agreement, Ex. B (Settlement Notice). Finally, the Settlement Notice explains that the Class Members who timely negotiate their settlement check will release their claims under the FLSA. (*Id.*)

## VI.  PRELIMINARY APPROVAL OF CLASS COUNSEL'S REASONABLE FEES AND COSTS IS APPROPRIATE

In the Seventh Circuit, the favored approach to awarding reasonable attorneys' fees in class litigation is as a percentage of the common fund. *See Matter of Cont'l Ill. Secs. Litig.*, 962 F.2d 566, 572–74 (7th Cir. 1992), *later proceeding*, 985 F.2d 867 (7th Cir. 1993). To determine what percentage of the fund should be awarded, the court looks to the market price for legal services, which has traditionally ranged from $33\frac{1}{3}$% to 40% in comparable litigation. *See Teamsters Local*

*Union No. 604 v. Inter-Rail Transp., Inc.*, No. 02 Civ. 1109, 2004 WL 768658, at *1 (S.D. Ill. Mar. 19, 2004).

Although there are two ways to compensate attorneys for successful prosecution of statutory claims—the lodestar method and the percentage of the fund method (*see Florin v. Nationsbank of Ga., N.A.*, 24 F.3d 560, 565–66 (7th Cir. 1994))—the trend in this Circuit is to use the percentage of the fund method in common fund cases like this one. *Castillo v. Noodles & Co.*, No. 16-CV-03036, 2016 WL 7451626, at *5 (N.D. Ill. Dec. 23, 2016) ("Courts routinely hold that one-third of a common fund is an appropriate attorneys' fees award in class action settlement, including wage and hour settlements."); *see also Campbell v. Advantage Sales & Mktg. LLC*, No. 09 Civ. 1430, 2012 WL 1424417, at *2 (S.D. Ind. Apr. 24, 2012) (approving award totaling one-third of the maximum settlement payment plus costs in FLSA settlement). In fact, the Seventh Circuit has cast doubt on the continued relevance of the lodestar method. *See Redman v. RadioShack Corp.*, 763 F.3d 622, 633 (7th Cir. 2014) (rejecting justification for attorneys' fees based on "amount of time that class counsel reported putting in on the case," and stating "the reasonableness of a fee cannot be assessed in isolation from what it buys"). Further, the Supreme Court has recognized that a percentage fee award is properly granted from the value of the total benefit that class counsel has created, and therefore necessarily includes the pool of money made available for class members. *Boeing Co. v. VanGemert*, 444 U.S. 472, 479–480 (1980) ("a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole").

Accordingly, Class Counsel requests that the Court grant preliminary approval of the fees referenced in the attached Settlement Agreement, inclusive of all past and anticipated future attorneys' fees, which represents 36% of the Settlement Amount, or $576,000.00, in addition to in

28

addition to litigation costs in an amount to be determined, but estimated not to exceed $6,000.00.

## CONCLUSION

While the Parties believe the settlement merits final approval, the Court need not make that determination at this time. The Court is being asked only to permit notice of the terms of the settlement to be sent to the class and to schedule a hearing, under Fed. R. Civ. P. 23(e), to consider any views expressed by Class Members of the fairness of the settlement, the benefits to be received by Class Members, and Class Counsel's request for an award of attorneys' fees and expenses. *See* 5 James Wm. Moore, *Moore's Federal Practice* ¶ 23.80[1], at 23–36 (3d ed. 2001).

For the reasons set forth above, the Parties respectfully request that the Court grant their Motion for Preliminary Approval of Class and Collective Action Settlement and enter the proposed Preliminary Approval Order, attached as Exhibit B.

Dated: September 2, 2025         Respectfully Submitted,

By: */s/ Teresa M. Becvar*

Ryan F. Stephan
James B. Zouras
Teresa M. Becvar
Gillian C. Kimmons
**STEPHAN ZOURAS, LLC**
222 W. Adams Street, Suite 2020
Chicago, IL 60606
(312) 233-1550
rstephan@stephanzouras.com
jzouras@stephanzouras.com
tbecvar@stephanzouras.com
gkimmons@stephanzouras.com

**ATTORNEYS FOR PLAINTIFFS**

By: */s/ Joseph K. Mulherin*

Joseph K. Mulherin
Mark A. Nelson
**MCDERMOTT WILL & EMERY LLP**

29

444 W. Lake Street
Chicago, Illinois 60606
(312) 372-2000
jmulherin@mwe.com
mnelson@mwe.com

**ATTORNEYS FOR DEFENDANT**

30

**<u>CERTIFICATE OF SERVICE</u>**

I, the attorney, hereby certify that on September 2, 2025, I electronically filed the

attached with the Clerk of the Court using the electronic filing system which will send such filing

to all attorneys of record.

*/s/ Teresa M. Becvar*

31